THOMAS, Judge.
 

 In November 2007, Laurie Placey (“the mother”) filed a protection-from-abuse (“PFA”) petition pursuant to the Protection from Abuse Act, codified at Ala.Code 1975, § 30-5-1 et seq. (“the PFAA”),
 
 [1]
 
 against Jill Placey (“the daughter”) in the Family Court Division of the Jefferson Circuit Court.
 
 [2]
 
 In her petition, the mother alleged that the 28-year-old daughter lived with the mother and John Placey (“the father”), that the daughter had pushed the mother, that the daughter had thrown frozen food at the mother, and that the daughter had threatened to kill both her parents by specific, detailed methods. The mother further alleged that the daughter was mentally ill, suffering from “treatment-resistant depression” and borderline-personality disorder.
 

 After a trial, the trial court entered a PFA order on March 27, 2008, restraining the daughter from committing further acts of abuse or threatening further abuse and from having any contact with the mother. The order also prohibited the daughter from “annoying, telephoning, contacting, or otherwise communicating, directly or indirectly, with the mother” and restrained the daughter from “transferring, concealing, encumbering, or otherwise disposing of any specified property mutually owned or leased by the parties.” The order further excluded the daughter from the mother’s residence. The PFA order was set to expire on March 27, 2009.
 

 The record reflects that litigation over the PFA order continued and that the daughter, in two “motions for consideration,” requested that certain property, in-
 
 *376
 
 eluding furniture, photographs, a video camera, a snake, a dog named Preston, and a quarter horse and all the tack related to that horse, be returned to her. In February 2009, the mother filed a motion to extend the existing PFA order for an additional period.
 
 See
 
 § 30-5-7(e)(2) (permitting a trial court to “continue” a PFA order for a definite period upon motion and a showing of cause). The trial court held another hearing, after which it extended the PFA order in effect to March 24, 2010.
 

 On July 28, 2009, the mother filed a motion requesting that the trial court hold the daughter in contempt for violating the PFA order. The mother alleged that the daughter’s fiancé, Michael Witcher, had forcibly removed the family dog, Preston, from the mother’s possession while the mother was out walking Preston. The mother further alleged that Witcher then had placed Preston into the automobile in which the daughter was waiting and had driven away.
 

 On July 30, 2009, the trial court rendered an order in which it stated that “[the] Court must now state and order that the ownership of the dog, Preston, has been discussed at every hearing and now [the Court] put[s] down in writing what has been verbally ordered: that [the mother and the father] have OWNERSHIP of Preston.” This order was entered on August 6, 2009. On August 31, 2009, the trial court entered an order requiring the daughter to return Preston to the mother.
 

 On September 3, 2009, the daughter moved to have the trial court certify the August 6, 2009, order as a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P. The trial court did so on September 9, 2009. The daughter then timely appealed to this court.
 
 [3]
 
 The mother’s contempt motion, which had been set for a hearing on August 11 and again on August 26, 2009, was repeatedly continued and had not been ruled on as of the date the notice of appeal was filed.
 

 The daughter makes two arguments on appeal. She argues first that the evidence at trial did not support the conclusion that the mother owned Preston. Her second argument is that the trial court lacked the authority to determine the permanent disposition of personal property under the PFAA.
 

 We will first consider the daughter’s second argument — that the trial court lacked the authority to determine the permanent disposition of personal property under the PFAA. The daughter relies on the stated purposes of the PFAA to argue that “the Legislature never intended for the PFAA to be a remedy for all criminal and civil disputes among the parties” to a PFA action. She further argues that the filing of a PFA petition does not “grant the trial court subject-matter jurisdiction for the permanent distribution of personal property.”
 

 The purposes of the PFAA are set out in Ala.Code 1975, § 30-5-l(b):
 

 “(b) This chapter shall be liberally construed and applied to promote all of the following purposes:
 

 “(1) To assure victims of domestic violence the maximum protection from abuse that the law can provide.
 

 “(2) To create a flexible and speedy remedy to discourage violence and harassment against family members
 
 *377
 
 or others with whom the perpetrator has continuing contact.
 

 “(3) To expand the ability of law enforcement officers to assist victims, to enforce the law effectively in cases of domestic violence, and to prevent further incidents of abuse.
 

 “(4) To facilitate equal enforcement of criminal law by deterring and punishing violence against family members and others who are personally involved with the offender.
 

 “(5) To recognize that battering is a crime that will not be excused or tolerated.
 

 “(6) To provide for protection orders to prevent domestic abuse and provide for court jurisdiction and venue; to provide for court hearing for petitions for relief; to provide for the contents and the issuance of protection orders; and to provide penalties for violations of protection orders.”
 

 Based on these “limited” purposes of the PFAA, the daughter contends that the PFAA was never intended to facilitate the disposition of the property of parties involved in PFA actions. She further points out that the temporary nature of a PFA order, which under § 30 — 5—7(e)(1) is limited to one year, although it may be extended for a definite period pursuant to § 30-5-7(e)(2), also supports the conclusion that a permanent determination of the ownership of property was not intended to be made in a PFA action. The disposition of property, the daughter says, should be handled in a appropriate action in an appropriate court, separate and apart from the PFA action.
 

 Although a determination of ownership of property is not a stated purpose of the PFAA, that alone does not decide the question whether a court considering a PFA action has the authority to determine the ownership of specific personal property.
 
 [4]
 
 The court deciding a PFA action has the power to make an order that, among other things, “[p]rohibit[s] the defendant from transferring, concealing, encumbering, or otherwise disposing of specified property mutually owned or leased by the parties.” § 30 — 5—7(c)(10). The court is also specifically given the broad power to “[ojrder other relief as it deems necessary to provide for the safety and welfare of the plaintiff....” § 30 — 5—7(c)(9). Because the Jefferson Family Court was acting in its capacity as a circuit court in its exercise of jurisdiction over the PFA action, that court would have had the same jurisdiction as a circuit court to consider, together with the PFA action, an action seeking to establish title to personal property, such as a detinue action.
 
 See
 
 § 30 — 5—3(b)(1) (stating that a PFA action may be joined with any other civil action).
 

 The trial court’s August 6, 2009, order indicated that the ownership of Preston had been an issue in the litigation since its inception. In fact, the daughter had filed “motions for consideration” in which she had requested that the trial court award her various items of personal property, including Preston. The transcript of the March 2009 hearing contains much testimony concerning the personal property the daughter sought to have returned to her. The trial court had made statements regarding the ownership of Preston during the several hearings it had held in this case. The mother’s contempt allegations asserting that the daughter’s fiancé had forcibly removed Preston from the mother’s possession revived the issue before the court and resulted in the trial court’s having to, in order to protect the
 
 *378
 
 mother and to effectuate the no-contact provisions in the PFA order, state definitively that Preston belonged to the mother. The trial court acted within its discretion in entering an order definitively determining the ownership of Preston so as to protect the mother from the daughter’s continued, yet prohibited, contact with the mother. Its exercise of jurisdiction over the question of the ownership of Preston, as well as various other items of personal property that were, in fact, returned to the daughter, was based on the daughter’s requests in her “motions for consideration” and the requests made at the 2009 hearing and at other, earlier hearings that the trial court determine those ownership rights; thus, the issue concerning the ownership of Preston and the other personal property at issue was tried by the implied consent of the parties.
 
 See
 
 Rule 15(b), Ala. Rule Civ. P. (“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”);
 
 Winkleblack v. Murphy,
 
 811 So.2d 521, 529-30 (Ala.2001); and
 
 Horwitz v. Horwitz,
 
 897 So.2d 387, 343-44 (Ala.Civ.App.2004). The daughter also argues that the trial court’s determination that Preston belonged to the mother was not supported by the evidence. The daughter testified that she and not the mother had gone to the Shelby County Humane Society to select and adopt Preston in March 2003. The adoption contract that the daughter executed is contained in the record; it lists the daughter as the adopter. However, the daughter indicated on the adoption contract that she lived with her parents and that her parents would assist in “the daily exercise, training, and care” of Preston. The adoption contract also prohibits the daughter from selling Preston or giving him away to another person.
 

 The daughter argues that the adoption contract proves that she, and not the mother, is Preston’s owner. Relying on the clause in the contract prohibiting her from transferring ownership of Preston, the daughter argues that her allowing the mother to assist in the care of Preston cannot be considered to have been a relinquishment of the daughter’s ownership of Preston. We are not convinced that the contract of adoption necessarily decides the question of ownership.
 

 Although our state has several laws dealing with animals, and dogs in particular, some of which involve the liability of an owner of an animal for damage or injury caused by it, only one statute defines “owner” — the statute concerning rabies, Ala.Code 1975, § 3-7A-1 et seq. Section 3-7A-l(9) defines “owner” as “[a]ny person having a right of property in a dog, cat, ferret, or other animal, or who keeps or harbors the animal, or who has it in his or her care, or acts as its custodian, or who permits the animal to-remain on or about any premises occupied by him or her.” The breadth of this definition is necessitated by the purpose of the statute, which is to assure the immunization of household pets against rabies in order to protect the public health and welfare. However, it is instructive to note that ownership of an animal involves more than a mere right of property in an animal.
 

 “Mere documentary title is not conclusive of ownership of an animal. A Certificate of registration creates only pri-ma facie presumption of title which can be rebutted by other competent evidence of actual ownership of a dog.
 

 “A dog is a corporeal movable, the ownership of which is presumed to be in the person who possesses it.
 

 “Broadly speaking, the burden of proving ownership of animals rests upon the party asserting ownership. Exclu
 
 *379
 
 sive possession of an animal for a period of time is presumptive evidence of ownership thereof, and long possession of animals is strong evidence of ownership.
 

 [[Image here]]
 

 “Ownership may be shown by any competent evidence.”
 

 4 Am.Jur.2d
 
 Animals
 
 § 5 (2007) (footnotes omitted). “Where a pet is the subject of a division of property, the courts sometimes consider the best interest of the animal, and, as a pet is personal property, sometimes do not.” 3B C.J.S.
 
 Animals
 
 § 4 (2003) (footnotes omitted).
 

 The testimony at trial, while conflicting, would support the conclusion that Preston was cared for primarily by the mother, who testified that Preston was “high maintenance.” The mother explained that Preston had to be walked every day and that he required special, expensive dog food. The mother explained that she had encouraged the daughter to pick out a dog at the humane shelter but ■ that Preston had always lived with the family as
 
 & family
 
 pet. According to both the mother and a letter from Preston’s veterinarian admitted into evidence, the parents had taken Preston to every veterinarian visit and had paid for all of the veterinarian bills associated with Preston’s care. The mother had cared for Preston since the daughter’s removal from the family home in 2008.
 

 The trial court determined that Preston would be better cared for in the family home occupied by the mother, where Preston had spent the last six years of his life. The trial court noted at trial that the daughter was living in a hotel and that Preston needed a yard and not the cramped quarters of a hotel room. Thus, it appears that the trial court considered the best interest of Preston in determining that the mother was Preston’s true owner. In light of the fact that the trial court considered conflicting ore tenus evidence in making this determination, we cannot revisit it.
 
 See Argo v. Greene,
 
 441 So.2d 950, 952 (Ala.Civ.App.1983) (“Where evidence relating to the ownership and right to possession of personal property ... is in conflict, the resolution of the conflict is for the [fact-finder].”).
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . In April 2010, the legislature amended the PFAA, effective July 1, 2010. Those amendments are not applicable in this case.
 

 [2]
 

 . In Jefferson County, PFA petitions are handled in the Jefferson Family Court, a division of the Jefferson Circuit Court.
 
 See
 
 Act No. 674, Ala. Acts 1967 (renaming the “Juvenile and Domestic Relations Court of Jefferson County” the "Family Court of Jefferson County”); Act No. 478, Ala. Acts 1935 (establishing in certain counties a "Juvenile and Domestic Relations Court” and providing that those courts would exercise jurisdiction over juvenile matters and also exercise "all the power, jurisdiction and authority” of the circuit courts). PFA petitions are apparently assigned "JU” case numbers, although those petitions are not juvenile in nature and although only circuit and district courts have jurisdiction over PFA actions. Ala.Code 1975, § 30 — 5—2(a)(3).
 

 [3]
 

 . Because this case involves no issues of juvenile law, and because the PFAA requires that a PFA action be handled in either a circuit court or a district court, but not a juvenile court, Ala.Code 1975, § 30-5-2(a)(3), this court has concluded that the time for taking the appeal in this case was 42 days, not 14 days.
 
 See
 
 Rule 4(a)(1), Ala. R.App. P.
 

 [4]
 

 . The PFAA specifically prohibits any order entered or any agreement made pursuant to the act from affecting title to real property. § 30 — 5—7(f)-