PITTMAN, Judge.
This appeal concerns a child-support order issued in the Federal Republic of Germany that was transmitted to Alabama for registration under the Alabama Uniform Interstate Family Support Act (“UIFSA”), § 30-8A-101 et seq., Ala.Code 1975.

Facts and Procedural History

In April 1999, the German Institute for Guardianship sent the following documents to the Baldwin Juvenile Court: three German-language copies and three English translations of a February 3, 1989, statement by L.V. Ill to the judicial clerk of the Local Court of Würzburg, Germany, acknowledging paternity of I.H.’s unborn child and agreeing to support the child as required by German law; three German-language copies and three English translations of a May 16, 1995, order of the Local Court of Nürnberg, Germany (“the German child-support order”), directing that L.V. provide support for the child, who was born on April 4, 1989, in specific monthly installments that increased with the age of the child; a child-support-payment history indicating that L.V. had failed to make any payments, that current monthly payments of $198 were due under the German child-support order, and that L.V. had accrued a child-support arrearage in the amount of $22,509.11; a sworn statement by the records custodian for the German Institute of Guardianship that the “facts concerning the arrearage accrued under the [May 16, 1995,] order are true and correct”; a complaint for support and reimbursement; and a registration statement.
The 1989 acknowledgment of paternity contains L.V.’s name, Social Security number, religious preference, marital status, date and place of birth in the United States, military unit and Army Post Office number, and the number of the identification card by which L.V. identified himself to the German authorities. The 1989 acknowledgment bears the seal of the Local Court of Würzburg accompanied by the phrase “Für die Richtigkeit der Abschrift,” which, according to the English translation, means “for the correctness of the copy.” Each English translation states that it is a “certified translation from German” and contains the seal of the “Translation-Interpreter Office,” with the name and signature of the translator and the attestation: “I certify that this is a true and correct translation to the best of my knowledge and belief.”
On June 21, 1999, the German child-support order requiring L.V. to pay child support in the amount of $198 per month, supported by the documents reflecting a past-due arrearage of $22,509.11, was registered in the Baldwin Juvenile Court in case number CS-99-131. After unsuccessful attempts to serve L.V. with notice of the registration of the German child-support order, the Baldwin County District Attorney, based on information and belief that L.V. resided in Mobile County, moved the Baldwin Juvenile Court to transfer the case to the Mobile Juvenile Court. On July 7, 2000, the Baldwin Juvenile Court transferred the case to the Mobile Juvenile Court. On October 5, 2000, the Mobile Juvenile Court reviewed the procedural *957 history of the case and adopted and affirmed the German child-support order that had been registered in Baldwin County-
In June 2008, following unsuccessful attempts to serve L.V. with notice of the registration in Mobile County, the case was transferred to the Jefferson Family Court,[1] where it was assigned ease number CS-08-912. No further action was taken in case number CS-08-912. On July 14, 2008, the Jefferson County Department of Human Resources (“DHR”) filed in the Jefferson Family Court a petition on the relation of I.H., seeking a finding of contempt against L.V. and alleging that L.V. was $89,388.23[2] in arrears in the payment of the child support ordered by the Local Court of Nürnberg, Germany. The petition was assigned case number CS-08-912.01. On January 13, 2009, the family court entered a notation, following a January 12, 2009, hearing, indicating that L.V. had been “served this date.” On May 11, 2009, following a May 8, 2009, hearing on the contempt petition, the family court entered an order stating that “[L.V.] acknowledges contempt,” ordering L.V. to pay $1,200 on or before June 30, 2009, and thereafter to pay $300 per month on the arrearage, and setting the case for review in 90-180 days.
L.V. appeared at review hearings on February 19 and September 24, 2010. On September 27, 2011, the family court determined that L.V. had not made a child-support payment for one year and ordered him to pay $3,000 by November 2, 2011. When L.V. failed to comply with the order by November 2, the family court ordered that he be incarcerated and set a $3,000 cash bond to purge the contempt. On November 4, 2011, L.V. paid $3,000 and was released from jail.
On April 9, 2012, L.V., acting through counsel, filed an answer to the contempt petition and a motion to challenge the registration of the German child-support order, alleging that he had never been served with notice of the registration of the order, denying paternity of the child, and requesting a genetic test.[3] On April 10 and May 30, 2012, L.V. appeared with counsel at compliance hearings, paying $1,500 and $300, respectively, and stating that, from that time forward, he would pay $500 each month. In an order rendered on May 30, 2012, and entered on June 8, 2012, the family court denied L.V.’s April 9, 2012, motion challenging the registration *958 of the German child-support order and requesting a paternity test.
On June 20, 2012, L.V., acting through new counsel, filed a motion to vacate the family court’s June 8, 2012, order or, in the alternative, to dismiss the contempt action for lack of subject-matter jurisdiction. That motion was set for a hearing on June 28, 2012. L.V. did not attend the hearing, but he was represented by counsel. The record contains no transcript of the hearing. On June 28, 2012, the family-court referee denied L.V.’s motion, and that order was adopted by the family-court judge on June 29, 2012. L.V. appealed to this court on the same day. The family-court judge certified the record on appeal as adequate on August 2, 2012. See Rule 28(A)(1)(a), Ala. R. Juv. P.
On appeal, L.V. argues that the family court lacked subject-matter jurisdiction to enforce the German child-support order because, he says, that foreign judgment was not properly registered, as required by § 30-3A-602, Ala.Code 1975, and, he says, he was never served with notice of the registration, as required by § 30-3A-605, Ala.Code 1975.

Standard of Review

L.V.’s argument regarding registration of the German child-support order implicates subject-matter jurisdiction. “Only strict compliance with [the UIFSA] registration procedure confers subject-matter jurisdiction upon an Alabama circuit court to enforce or to modify a foreign child-support judgment. See Mattes v. Mattes, 60 So.3d 887 (Ala.Civ.App.2010), and Ex parte Owens, 65 So.3d 953 (Ala.Civ.App.2010).” Ex parte Ortiz, 108 So.3d 1046, 1050 (Ala.Civ.App.2012). Our review of the registration issue is de novo. Id.
L.V.’s argument concerning service of the notice of registration, however, implicates the issue whether the family court lacked personal jurisdiction over L.V. — a defense that, unlike lack of subject-matter jurisdiction, is waived if not timely asserted. See § 30-3A-605 (Alabama Comment) (stating that “subsection (b)(2) [of § 30-3A-605] ... requires that service be obtained under the Alabama Rules of Civil Procedure”) and Rule 12(h)(1), Ala. R. Civ. P. (providing that a defense of insufficiency of service of process is waived if it is not included in a Rule 12 motion, a responsive pleading, or an amended responsive pleading). Our review of the issue whether a party has waived personal jurisdiction is de novo. Foster v. Foster, 709 So.2d 1301, 1302 (Ala.Civ.App.1998).

Discussion

Registration: Section 30-3A-602, which sets out the procedure for registration of a foreign child-support judgment, provides:
“(a) A support order or income-withholding order of another state[4] may be registered in this state by sending the following documents and information to the appropriate court in this state:
*959 “(1) a letter of transmittal to the court requesting registration and enforcement;
“(2) two copies, including one certified copy, of all orders to be registered, including any modification of an order;
“(3) a sworn statement by the party seeking registration or a certified statement by the tribunal or collection agency showing the amount of any arrearage;
“(4) the name of the obligor and, if known:
“(i) the obligor’s address and Social Security number;
“(ii) the name and address of the obligor’s employer and any other source of income of the obligor; and “(iii) a description and the location of property of the obligor in this state not exempt from execution; and
“(5) the name and address of the obligee and, if applicable, the agency or person to whom support payments are to be remitted.
“(b) On receipt of a request for registration, the registering court shall cause the order to be filed as a foreign judgment, together with one copy of the documents and information, regardless of their form.
“(c) A petition or comparable pleading seeking a remedy that must be affirmatively sought under other law of this state may be filed at the same time as the request for registration or later. The pleading must specify the grounds for the remedy sought.”
L.V. contends that the German child-support order was not properly registered because, he says, it was not filed in the appropriate Alabama court. See § 30-3A-602(a). He makes no cogent argument concerning this issue, other than to assert that because service could not be accomplished — first, in Baldwin County, and later, in Mobile County — that the juvenile courts of Baldwin County' and Mobile County were not the proper courts in which to have registered the order. Although we need not consider the issue further, see Rule 28(a)(10), Ala. R.App. P., we note that the materials transmitted from Germany to the Baldwin Juvenile Court show a Baldwin County address for L.V. and that the subsequent transfers to the Mobile Juvenile Court and to the Jefferson Family Court were based upon information received by the transferor courts that L.V. was residing in Mobile County and, subsequently, Jefferson County. See generally Mattes v. Mattes, 60 So.3d 887, 890 (Ala.Civ.App.2010) (noting that UIFSA requires “ ‘the obligee ... to register the existing order ... in a state which has personal jurisdiction over the obligor’” (quoting § 30-3A-611 (Official Comment))).
L.V. also maintains that it cannot be discerned from the record on appeal whether a “letter of transmittal ... requesting registration and enforcement” of the German child-support order was filed, see § 30-3A-602(a), or how many copies of the order were filed or whether any certified copies of the order were filed, see § 30-3A-602(a)(2). It is true that the record does not specifically indicate that the packet of materials sent by the German Institute of Guardianship to the Baldwin Juvenile Court contained a “letter of transmittal ... requesting registration and enforcement” of the German child-support order. (Emphasis added.) The record clearly demonstrates, however, that the packet itself was a “transmittal” from the German Institute of Guardianship and that the materials contained within the packet specifically, the “registration statement” *960 and the “complaint for support and reimbursement under the Reciprocal Enforcement of Support Act” — “requested] ... registration and enforcement” of the order.
In Bank of Anniston v. Farmers & Merchants State Bank of Krum, Texas, 507 So.2d 927 (Ala.1987), our supreme court rejected the argument that, because the defendant’s address was incorrectly listed on a certificate of judgment, the statutory requirements for filing the certificate had not been strictly observed. The court stated:
“[T]he statutory requirement that the contents of the certificate of judgment be strictly observed must be viewed in relation to the purpose of that requirement. That purpose is to provide notice of the judgment to anyone searching title to the real property.... Here, ... the certificate of judgment was within the chain of title and would have given notice to anyone searching title to the property.”
507 So.2d at 929. The court concluded: “We cannot say that the trial court erred in finding that the certificate of judgment complied with the requirements of § 6-9-210[, Ala.Code 1975]. To hold otherwise would be a triumph of form over substance.” 507 So.2d at 930.
Likewise, holding that there was not “strict compliance with [the UIFSA] registration procedure” and that an Alabama court did not have subject-matter jurisdiction to enforce the German child-support order, see Ex parte Ortiz, 108 So.3d at 1050, because a perfunctory cover letter does not appear in the record before us would also represent a triumph of form over substance. The self-evident purpose of a “letter of transmittal ... requesting registration and enforcement” of a foreign order is to convey a request by the issuing “state” to register and enforce the issuing tribunal’s order. That purpose was accomplished by the materials contained within the packet transmitted from Germany.
L.V.’s argument that it cannot be discerned from the record on appeal how many copies of the German child-support order were filed is without merit. As previously discussed, the packet of materials contained a more than sufficient number of copies and all of them were filed.
L.V.’s last argument directed to the allegedly improper registration of the German child-support order is that the copies of the order were not certified. The 1995 court order contains the seal of the Local Court of Nürnberg. According to the English translation of the words appearing on the order, a preprinted, stamped writing immediately above the seal states: “The above official copy, which is identical with the original document, is issued for the petitioner for the purpose of forcible execution against the respondent.” Below those words appears the signature of “Marx, Justice Secretary,” who is designated as the “recorder of the office” of the Local Court of Nürnberg, and the date: “28 June 1995.”
A certified copy of a public record is one that is “signed and certified as a true copy by the officer who has lawful custody of the original.” II Charles W. Gamble and Robert J. Goodwin, McElroy’s Alabama Evidence § 218.01(2) (6th ed.2009). We conclude that the document in question is a “certified copy” of the 1995 German child-support order issued by the Local Court of Nürnberg, because it was signed and acknowledged to be “identical [to] the original document” by one who was evidently the custodian of records for that court.
The registration of the German child-support order complied with § 30-3A-602.
*961 Service of the Notice of Registration: Section 30-8A-605 provides:
“(a) When a support order or income-withholding order issued in another state is registered, the registering court shall notify the nonregistering party as provided under the Alabama Rules of Civil Procedure. The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order.
“(b) The notice must inform the non-registering party:
“(1) that a registered order is enforceable as of the date of registration in the same manner as an order issued by a court of this state;
“(2) that a hearing to contest the validity or enforcement of the registered order must be requested within 30 days after the date of service obtained under the Alabama Rules of Civil Procedure;
“(3) that failure to contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted; and
“(4) of the amount of any alleged arrearages.
“(c) Upon registration of an income-withholding order for enforcement, the registering tribunal shall notify the obli-gor’s employer pursuant to the income-withholding law of this state.”
 The family court recorded a notation in case number CS-08-912.01 that L.V. was served on January 12, 2009. The record does not indicate whether L.V. was served only with the contempt petition filed by DHR or whether he was also served with notice of the registered German child-support order and “the documents and relevant information accompanying th[at] order.” § 30-3A-605(a). However, even if L.V. was not served with notice of the registered German child-support order and the documents associated with the registration of that order at the time he was served with the contempt petition, he waived the defense of lack of notice of the registered German child-support order by submitting to the jurisdiction of the Jefferson Family Court on May 8, 2009, when he appeared at a hearing on the contempt petition and “acknowledge!)! that he was in] contempt [of the German child-support order]” without challenging the family court’s exercise of personal jurisdiction over him. Cf. Hall v. Hall, 122 So.3d 185 (Ala.Civ.App.2013) (holding that, in 2010, when husband filed a petition to modify a default judgment of divorce that had been entered against him in 2004 without challenging the court’s exercise of personal jurisdiction over him in 2004, the husband waived the defense of lack of personal jurisdiction); and D.B. v. M.A., 975 So.2d 927, 937-38 (Ala.Civ.App.2006) (holding, in consolidated proceedings involving adoption and registration of a Nebraska child-custody judgment, that Alabama adoptive couple had waived the right to service of notice of registration of the Nebraska judgment by failing to object to the lack of notice until the filing of their postjudgment motion in the adoption proceeding). “ ‘[I]f a defendant intends to rely on want of jurisdiction over his person, he must appear, if at all, for the sole purpose of objecting to the jurisdiction of the court. An appearance for any other purpose is usually considered general.’” R.M. v. Elmore Cnty. Dep’t of Human Res., 75 So.3d 1195, 1200 (Ala.Civ.App.2011) (quoting Persons v. Summers, 274 Ala. 673, 681, 151 So.2d 210, 215 (1963)). *962 Consequently, L.V. waived any claim as to the insufficiency of service of process.
The Jefferson Family Court had subject-matter jurisdiction of this UIFSA enforcement action and properly exercised personal jurisdiction over L.V. Its judgment is affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. "[T]he Jefferson Family Court [is] a division of the Jefferson Circuit Court. See Act No. 674, Ala. Acts 1967 (renaming the 'Juvenile and Domestic Relations Court of Jefferson County' the 'Family Court of Jefferson County'); Act No. 478, Ala. Acts 1935 (establishing in certain counties a 'Juvenile and Domestic Relations Court’ and providing that those courts would exercise jurisdiction over juvenile matters and also exercise 'all the power, jurisdiction and authority’ of the circuit courts).”
Placey v. Placey, 51 So.3d 374, 375 n. 2 (Ala.Civ.App.2010).

. The arrearage amount was based on a May 20, 2008, letter from Natalie Harten, a representative of the German Institute for Youth, Human Services, and Family Law in Heidelberg, Germany, informing Bonnie Odell, an employee of the DHR Child-Support-Enforcement Unit in Birmingham, that the current arrearage was $39,462.33. The record contains no explanation for the discrepancy between the arrearage alleged in DHR's petition and the arrearage reported by Harten.

.Section 30-3A-315, Ala.Code 1975, provides:
"A party whose parentage of a child has been previously determined by or pursuant to law may not plead nonparentage as a defense to a proceeding under this chapter, rather, such issue must be pursued in the appropriate forum of the jurisdiction in which paternity was established, and according to the law of that jurisdiction.”

. A “state” includes “a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this chapter [i.e., UIF-SA], the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act.” Ala.Code 1975, § 30-3A-101 (20)(ii). The English translation of the German-language complaint that was included in the packet of materials sent to the Baldwin Juvenile Court by the German Institute of Guardianship states: "This is a petition for support under the Reciprocal Enforcement of Support Act as adopted by the State of Alabama. The Federal Republic of Germany has a substantially similar reciprocal law concerning the enforcement of support.”