On Application for Rehearing

PER CURIAM.
This court’s opinion of October 24, 2014, is withdrawn, and the following is substituted therefor.
E.L. (“the mother”) appeals from a judgment of the Jefferson Family Court (“the family court”) awarding V.L., the mother’s former same-sex partner, periodic visitation with the mother’s biological children, S.L., N.L., and H.L. (hereinafter referred to collectively as “the children”). We reverse and remand.

*1097
Background

On October 31, 2013, V.L. filed a petition in the Jefferson Circuit Court (“the circuit court”). In that petition, V.L. asserted that she and the mother had engaged in a same-sex relationship from 1995 to 2011; that, during the course of their relationship, the mother had given birth to S.L. on December 13, 2002, and to twins, N.L. and H.L., on November 17, 2004, through the use of assisted reproductive technology; that, at all times since the birth of the children, V.L., in addition to the mother, had acted as a parent to the children; that, on May 30, 2007, with the mother’s consent, the Superior Court of Fulton County, Georgia (“the Georgia court”), had entered a judgment approving VL.’s adoption of the children (“the Georgia judgment”), which judgment, V.L. asserted, was entitled to full faith and credit by the courts of this state; and that V.L. is listed as a parent on the children’s Alabama birth certificates.
V.L. further asserted that the mother had denied her the traditional and constitutional parental rights to the children she had secured in the Georgia judgment, including visitation and access to their educational and other information. V.L. averred that the children have known both parties as their parents since their births and that the children were being harmed by the mother’s denying them association with her. V.L. further averred that she was fit to assume the children’s custody.
V.L. requested that the circuit court register the Georgia judgment; declare her legal status, rights, and relations to the children pursuant to the Georgia judgment; award her custody of the children or, alternatively, award her joint custody with the mother and establish a schedule of custodial periods; order the mother to pay her child support and attorney’s fees; and provide her any such other relief to which she might be entitled.
On November 4, 2013, the circuit court transferred the matter to the family court. On December 17, 2013, the mother moved the family court to dismiss V.L.’s petition, asserting, among other things, that the family court lacked subject-matter jurisdiction and that V.L. lacked standing to invoke the family court’s jurisdiction.[1] On December 27, 2013, V.L. amended her petition to reassert the allegations in the original petition, but also to allege the dependency of the children based on their separation from her. On February 3, 2014, the mother filed a memorandum of law to support her motion to dismiss. That same date, V.L. filed a response to the motion to dismiss. On March 11, 2014, the mother “renewed” her motion to dismiss, attaching her affidavit. That same date, V.L. responded to the renewed motion to dismiss, attaching her affidavit and several exhibits.
On April 3, 2014, without a hearing, the family court denied the mother’s motion to dismiss and awarded V.L. scheduled visitation with the children. On April 15, 2014, the family court entered a supplemental order specifically denying all other requested relief and closing the case. On April 17, 2014, the mother moved the family court to alter, amend, or vacate its judgment. On May 1, 2014, the mother’s postjudgment motion was deemed denied by operation of law, and, on May 12, 2014, the mother timely filed her notice of ap *1098 peal.[2] See Rule 1(B), Ala. R. Juv. P.; Rule 4(a), Ala. R.App. P.; and Holifield v. Lambert, 112 So.3d 489, 490 (Ala.Civ.App.2012) (“[C]ases filed in the Jefferson Family Court and docketed with a case number having a ‘CS’ prefix[ ] are governed by the Alabama Rules of Juvenile Procedure.”).

Analysis

Subject-Matter Jurisdiction of the Family Court

Before proceeding to consider the merits of the appeal, we must first consider whether the family court had subject-matter jurisdiction to enter its April 3, 2014, judgment. As stated above, the action was commenced in the circuit court, and that court, sua sponte, transferred the action to the family court. At oral argument, the parties all agreed that, in its judgment, the family court impliedly enforced the Georgia judgment by recognizing V.L.’s right to visitation as an adoptive parent of the children. The family court did not award V.L. visitation under any other theory, having expressly rejected any allegation of dependency or any other claim raised by V.L. in her pleadings. Thus, the preliminary question is whether the family court, when ruling on a child-custody matter, has subject-matter jurisdiction to enforce a foreign judgment.
Act No. 478, Ala. Acts 1935, §§ 2 & 3, established a juvenile and domestic-relations court for Jefferson County, which, by Act. No. 674, Ala. Acts 1967, was renamed the Family Court of Jefferson County. See Placey v. Placey, 51 So.3d 374, 375 n. 2 (Ala.Civ.App.2010). Section 2 of Act No. 478 provides, in pertinent part, that the family court “shall have and exercise original and exclusive jurisdiction” over “[b]ills, petitions or writs involving the custody of minors.” Section 3 of Act No. 478 provides that, as to such actions that are within its jurisdiction, the family court is invested with “all the power, jurisdiction and authority of Circuit and Chancery Courts.... ”
The petition filed by V.L. seeking a determination of her custody rights to the children clearly fell within the general subject-matter jurisdiction of the family court. We further conclude that the family court had the specific jurisdiction to enforce the Georgia judgment. According to Ala.Code 1975, § 6-9-230 et seq., the Uniform Enforcement of Foreign Judgments Act (“the UEFJA”), upon compliance with certain filing provisions, a judgment entered in a foreign jurisdiction that is entitled to full faith and credit may be enforced in this state by a circuit court. See Nix v. Cassidy, 899 So.2d 998, 1002 (Ala.Civ.App.2004) (“The circuit court had jurisdiction to accept the judgment creditor’s filing of the Georgia judgment pursuant to § 6 — 9—232[, Ala.Code 1975].... ”). Because § 3 of Act No. 478 vests the family court with the same authority as circuit courts in relation to actions involving the custody of children, the family court possesses the same power as a circuit court to enforce a foreign judgment if necessary to dispose of a child-custody petition.
V.L. followed the procedure established under the UEFJA by filing an authenticated copy of the Georgia judgment with the clerk of the family court, see Ala.Code 1975, § 6-9-232, and by filing an affidavit setting forth the information required by *1099 AkuCode 1975, § 6-9-233. Thus, V.L. properly invoked the subject-matter jurisdiction of the family court to enforce the Georgia judgment. V.L. did not have to further register the Georgia judgment pursuant to the provisions of the Alabama Uniform Child Custody Jurisdiction and Enforcement Act, Ala.Code 1975, § 30-3B-101 et seq., because the Georgia judgment is not a “child custody determination” within the meaning of Ala.Code 1975, § 30-3B-102(3) (defining “child custody determination” as “[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child”). See also Ala.Code 1975, § 30-3B-102(4) (defining “child custody proceeding” so as to exclude “a court proceeding involving ... adoption”). Thus, the family court could lawfully enforce the Georgia judgment as part of its adjudication of the custody petition filed by V.L.

Subject-Matter Jurisdiction of the Georgia Court

“A judgment [filed pursuant to the UEFJA] has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner....” § 6-9-232. “Therefore, once the judgment is domesticated, [a party attacking the validity or enforceability of the judgment] must resort to procedures applicable to any other judgment originally entered by a circuit court in order to set it aside.” Greene v. Connelly, 628 So.2d 346, 350 (Ala.1993), abrogated on other grounds, Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638 (Ala. 2003). In this case, the mother argued in her renewed motion to dismiss that the Georgia judgment should be set aside because it is void for lack of subject-matter jurisdiction, a ground recognized by Rule 60(b)(4), Ala. R. Civ. P. We, therefore, treat that portion of her motion to dismiss as a Rule 60(b)(4) motion, which is an appropriate mechanism to vacate a domesticated foreign judgment. See Bartlett v. Unistar Leasing, 931 So.2d 717, 720 n. 2 (Ala.Civ.App.2005).
“Before giving effect to a foreign judgment, Alabama courts are permitted to inquire into the jurisdiction of the foreign court rendering the judgment.” Feore v. Feore, 627 So.2d 411, 413 (Ala.Civ.App.1993); see also Pirtek USA, LLC v. Whitehead, 51 So.3d 291, 295 (Ala.2010). Generally speaking, “[t]he scope of inquiry is limited to, ‘(1) whether the issue of jurisdiction was fully and fairly litigated by the foreign court and (2) whether the issue of jurisdiction was finally decided by the foreign court.’” Feore, 627 So.2d at 413 (quoting Alston Elec. Supply Co. v. Alabama Elec. Wholesalers, Inc., 586 So.2d 10, 11 (Ala.Civ.App.1991)). However, if the court entering the foreign judgment did not litigate and decide the question of its subject-matter jurisdiction, an Alabama court may make its own determination of subject-matter jurisdiction on a Rule 60(b)(4) motion. See Lanier v. McMath Constr., Inc., 141 So.3d 974 (Ala.2013). “[T]here is a presumption that the court rendering the judgment had the jurisdiction to do so, and the burden is placed on the party challenging the judgment to overcome the presumption.” McGouryk v. McGouryk, 672 So.2d 1300, 1302 (Ala.Civ.App.1995).
In this case, the Georgia court rendered a three-page judgment in which it found that the mother had conceived the children via artificial insemination through an anonymous sperm donor. According to the judgment, V.L. acted as “an equal second parent to the children” after their births. The judgment recites that it would be in the best interests of the children, and *1100 consistent with the mother’s and V.L.’s life-long parenting arrangement, to allow V.L. to adopt the children without terminating the parental rights of the mother. In that judgment, the Georgia court did not expressly address its subject-matter jurisdiction. From the affidavit filed by the mother in support of her renewed motion to dismiss, it is apparent that she fully supported V.L.’s petition and that she never contested the subject-matter jurisdiction of the Georgia court.[3] Because that issue was not fully and fairly litigated in the Georgia court, it can be considered anew on the motion of the mother. -
Section 19-8-2(a), Ga.Code Ann,, a part of the Georgia Adoption Code, Ga,Code Ann., § 19-8-1 et seq., provides, in pertinent part, that “[t]he superior courts of the several counties shall have exclusive jurisdiction in all matters of adoption .... ” The Georgia court, as a superior court of Fulton County, had general subject-matter jurisdiction over adoptions. The Georgia Supreme Court has not yet construed the provisions of the Georgia Adoption Code to determine if it allows adoption by a same-sex partner who has assumed a de fado parental role. In Wheeler v. Wheeler, 281 Ga. 888, 642 S.E.2d 103 (2007) (Carley, J., dissenting), Justice Carley asserted that Georgia law does not authorize a court to approve an adoption by a person who is not a stepparent or a spouse of the biological parent unless the parents of the child surrender their parental rights or their parental rights are involuntarily terminated. In Bates v. Bates, 317 Ga.App. 339, 730 S.E.2d 482 (2012), the Georgia Court of Appeals recognized that it is “doubtful” that Georgia law permits such “second parent” adoptions[4] and that arguments against the validity of an adoption decree approving such an adoption “might well have some merit.” 317 Ga.App. at 342, 730 S.E.2d at 484. Our independent review of the Georgia Adoption Code fully supports Justice Curley’s position. Although it may be that the Georgia court erroneously construed Georgia law so as to permit V.L. to adopt the children as a “second parent,” that error goes to the merits of the case and not to the subject-matter jurisdiction of the Georgia court. See Pirtek, 51 So.3d at 296 (holding that court in making inquiry into jurisdiction of foreign court to enter judgment cannot consider merits or correctness of foreign judgment).
The mother contends that she and V.L. did not properly invoke the jurisdiction of the Georgia court because they did not reside in Georgia as required by Georgia law. See Ga.Code Ann., § 19-8-2(b) (“All petitions under this chapter shall be filed in the county in which any peti *1101 tioner resides.”); and Ga.Code Ann., § 19-8-3(a)(3) (“Any adult person may petition to adopt a child if the person ... [h]as been a bona fide resident of this state for at least six months immediately preceding the filing of the petition.”). We note, however, that the Georgia court specifically found in the Georgia judgment that V.L. and the mother had met the residency requirements. Arguably, because the Georgia court has already decided that the residency requirements were satisfied, the family court was bound by that determination and could not find otherwise. See Feore, supra. Even if it was not bound by the Georgia judgment, the family court did not err in failing to inquire into the mother’s claim that she and V.L. had defrauded the Georgia court as to their residency. Georgia Code Aim., § 19 — 8—18(e), provides: “A decree of adoption issued pursuant to subsection (b) of this Code section shall not be subject to any judicial challenge filed more than six months after the date of entry of such decree.” That provision effectively precludes the mother from attacking the Georgia judgment on the ground of lack of residency. See Williams v. Williams, 312 Ga.App. 47, 717 S.E.2d 553 (2011).
In summary, we conclude that the Georgia court had subject-matter jurisdiction to enter the Georgia judgment and that the family court did not err in denying the mother’s Rule 60(b)(4) motion.

Full Faith and Credit

The UEFJA defines a “foreign judgment” as “any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.” Ala.Code 1975, § 6-9-231. Article IV, § 1, of the United States Constitution provides that “[flull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.” In interpreting the Full Faith and Credit Clause, the United States Supreme Court has held that “[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.” Baker v. General Motors Corp., 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Because the Georgia court had appropriate jurisdiction, the Georgia judgment is entitled to full faith and credit throughout the United States, including Alabama.
Under the federal Constitution, each state is entitled to develop its own statutes embodying its own public policy, but the United States Supreme Court has declared that there is “no roving ‘public policy exception’ to the full faith and credit due judgments.” Baker, 522 U.S. at 233. Hence, a court may not refuse to enforce a foreign judgment on the ground that it violates the public policy of the forum state. Id. Thus, even if the law of Alabama generally disallows adoption by same-sex partners, see In re Adoption of K.R.S., 109 So.3d 176 (Ala.Civ.App.2013), under the Full Faith and Credit Clause, a court of this state must still enforce a duly entered foreign judgment approving the adoption petition of a same-sex partner. See, e.g., Embry v. Ryan, 11 So.3d 408 (Fla.Dist.Ct.App.2009). We reject any contention by the mother that the family court should have refused to enforce the Georgia judgment based on Alabama public policy.

Due Process

Although we agree with V.L. that the family court did not err in recognizing V.L. as a second parent of the children pursuant to the Georgia judgment, we hold that the family court did err in awarding V.L. visitation without affording *1102 the mother a hearing. Courts of equity-have broad power to act for the best interests of children, but that power must be exercised consistently with the due-process rights of both parents. Thorne v. Thorne, 344 So.2d 165, 169 (Ala.Civ.App.1977). Before visitation rights may be adjudicated, each parent is entitled to due notice and an opportunity to be heard on the matter. Ex parte Dean, 137 So.3d 341, 345 (Ala.Civ.App.2013). Moreover, in a contested case, a court should award visitation only after ascertaining through an evidentiary hearing that visitation would be in the best interests of the children. See id. Accordingly, the family court erred in awarding V.L. visitation based simply on her status as an adoptive parent under the Georgia judgment without conducting an evidentia-ry hearing to inquire into the best interests of the children.
Based on that error, we reverse the judgment of the family court and remand the case. On remand the family court is to forthwith conduct an evidentiary healing to decide the visitation issue.
The mother’s request for the award of attorneys fees on appeal is denied.
APPLICATION GRANTED; OPINION OF OCTOBER 24, 2014, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.

. On February 3, 2014, V.L. moved the family court to consolidate the underlying action with actions designated by case numbers "JU-55.01; XU-56.01; JU-57.01,” which are referred to in the record as dependency actions. The record contains no indication that the family court acted on that motion.

. Although the mother moved the family court and this court to stay enforcement of the judgment pending resolution of her post-judgment motion and appeal, those motions were denied. The mother subsequently petitioned our supreme court for mandamus relief from the denial of those motions; however, the mother filed a motion to dismiss that petition, which motion was granted by the supreme court. See E.L. v. V.L. (No. 1131084, Nov. 7, 2014).

. The mother’s failure to contest subject-matter jurisdiction before the Georgia court does not prevent her from now challenging subject-matter jurisdiction in Alabama because subject-matter jurisdiction cannot be conferred by estoppel, see Cedartown North P’ship, LLC v. Georgia Dep’t of Transp., 296 Ga.App. 54, 56, 673 S.E.2d 562, 565 (2009) ("It is well established that ‘(¡jurisdiction of the subject matter of a suit cannot be conferred by agreement or consent, or be waived or based on an estoppel of a party to deny that it exists.' ” (quoting Redmond v. Walters, 228 Ga. 417, 417, 186 S.E.2d 93, 94 (1971))); see also Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008), and may be raised at any time. Abushmais v. Erby, 282 Ga. 619, 652 S.E.2d 549 (2007); and Ex parte Ortiz, 108 So.3d 1046 (Ala.Civ.App.2012).

. "A ‘second parent’ adoption apparently is an adoption of a child having only one living . parent, in which that parent retains all of [his or] her parental rights and consents to some other person — often [his or] her spouse, partner, or friend — adopting the child as a ‘second parent.’ See Butler v. Adoption Media, LLC, 486 F.Supp.2d 1022, 1044 ... (N.D.Cal.2007) (describing ‘second parent’ adoption under California law).” Bates, 317 Ga.App. at 340 n. 1, 730 S.E.2d at 483 n. 1.