PER CURIAM.
This Court granted the petition filed by E.L. seeking certiorari review of the judgment entered by the Court of Civil Appeals affirming the judgment entered by the Jefferson Family Court insofar as that judgment recognized and gave effect to an adoption decree entered by the Superior Court of Fulton County, Georgia (“the Georgia court”), approving the adoption by V.L., E.L.’s former same-sex partner, of E.L.’s biological children, S.L., N.L., and H.L. (hereinafter referred to collectively as “the children”). We reverse and remand.
I.
E.L. and V.L. were involved in a relationship from approximately 1995 through 2011. During the course of that relationship, they maintained a residence in Hoover. In December 2002 E.L. gave birth to S.L., and in November 2004 E.L. gave birth to twins, N.L. and H.L. All births were achieved through the use of assisted-reproductive technology. It is undisputed that, following the births of the children, V.L. acted as a parent to them, and, consistent with that fact, the parties eventually made the joint decision to take legal action to formalize and to protect the parental role V.L. had undertaken. V.L. explained this decision as follows in an affidavit filed with the Jefferson Family Court after initiating this action:
“We began researching second-parent and co-parent adoptions. We had heard through friends that Fulton County, Georgia, was receptive to same-sex parents seeking such. I could not find an attorney in Birmingham that had any knowledge of such or that was very helpful. In the fall of 2006 we met with an attorney in Atlanta, Georgia, to seek legal advice. We were informed that I needed to be a resident of the state of Georgia, specifically Fulton County, for at least six (6) months to petition for adoption in Fulton County. E.L. spoke *1104 with a friend from college ... that lives in Atlanta and her friend’s mother owned a house in Alpharetta. We went to Atlanta and looked over the home and spent time with [E.L.’s] friend and her family, including [the friend’s] mother. [The friend’s] mother ... offered up her house for rent to us. [E.L.] and I both signed a lease for the Alpharetta residence on October 1, 2006. I submitted fingerprints to the FBI which were obtained in Alpharetta on January 25, 2007, also part of the adoption process. A background check request was submitted using the Alpharetta address. On March 26, 2007, a home study was done at the address in Georgia; per my attorney this was a requirement for petitioning for adoption. Our family of five (5) was all present.”
E.L. does not dispute these basic facts; however, she states in her own affidavit filed with the Jefferson Family Court that, although the parties leased the Alpharetta house, they never spent more than approximately two nights in it, instead continuing to live at their Hoover residence and to work at their jobs in Alabama.
On April 10, 2007, V.L. filed in the Georgia court a petition to adopt the children. E.L. subsequently filed with the Georgia court a document labeled “parental consent to adoption” in which she stated that she consented to V.L.’s adopting the children and that, although she was not relinquishing or surrendering her own parental rights, she desired that the requested adoption would “have the legal result that [V.L.] and [the children] will also have a legal parent-child relationship with legal rights and responsibilities equal to mine through establishment of their legal relationship by adoption.” On May 30, 2007, the Georgia court entered its final decree of adoption (“the Georgia judgment”) granting V.L.’s petition and declaring that “[V.L.] shall be permitted to adopt [the children] as her children.” New birth certificates were subsequently issued for the children listing V.L. as a parent.
In approximately November 2011, E.L. and V.L. ended their relationship, and, in January 2012, V.L. moved out of the house E.L. and V.L. had previously shared. On October 31, 2013, V.L. filed a petition in the Jefferson Circuit Court alleging that E.L. had denied her access to the children and had interfered with her ability to exercise her traditional and constitutional parental rights. Accordingly, she asked the court to register the Georgia judgment, to declare her legal rights pursuant to the Georgia judgment, and to award her some measure of custody of or visitation with the children. The matter was transferred to the Jefferson Family Court, and E.L. subsequently moved that court to dismiss V.L.’s petition on multiple grounds. Both parties subsequently filed additional mem-oranda and the above-referenced affidavits regarding E.L.’s motion to dismiss.
On April 3, 2014, the Jefferson Family Court denied E.L.’s motion to dismiss, without a hearing, and simultaneously awarded V.L. scheduled visitation with the children. On April 15, 2014, the Jefferson Family Court entered an additional order noting that all other relief requested by the parties was denied and that the court considered the case closed. E.L. promptly moved the court to alter, amend, or vacate its judgment; however, on May 1, 2014, that motion was denied by operation of law, and, on May 12, 2014, E.L. filed her notice of appeal to the Court of Civil Appeals.[1]
*1105 Before the Court of Civil Appeals, E.L. argued (1) that the Jefferson Family Court lacked subject-matter jurisdiction to rule on V.L.’s petition; (2) that the Georgia court lacked subject-matter jurisdiction to enter the Georgia judgment; (3) that the Jefferson Family Court should have refused to recognize and to enforce the Georgia judgment for public-policy reasons; and (4) that the Jefferson Family Court denied her due process inasmuch as it awarded V.L. visitation rights without holding an evidentiary hearing at which E.L. could be heard. On February 27, 2015, the Court of Civil Appeals released its opinion rejecting the first three of these arguments, but holding that the Jefferson Family Court had erred by awarding V.L. visitation without conducting an evidentia-ry hearing. E.L. v. V.L., 208 So.3d 1094, 1102 (Ala.Civ.App.2015). Accordingly, the judgment of the Jefferson Family Court was reversed and the case remanded for the Jefferson Family Court to conduct an evidentiary hearing before deciding the visitation issue; however, the implicit finding in the judgment of the Jefferson Family Court that the Georgia judgment was valid and subject to enforcement in Alabama was upheld. See E.L. v. V.L., 208 So.3d at 1098 (“At oral argument, the parties all agreed that, in its judgment, the family court impliedly enforced the Georgia judgment by recognizing V.L.’s right to visitation as an adoptive parent of the children.”).
On March 11, 2015, E.L. petitioned this Court for a writ of certiorari to review the Court of Civil Appeals’ affirmance of the judgment of the Jefferson Family Court to the extent that judgment recognized and enforced the Georgia judgment. On April 15, 2015, we granted E.L.’s petition seeking certiorari review and set the briefing schedule for the parties.[2]
II.
The issues raised by E.L. in this appeal regarding the effect and validity Alabama courts should afford the Georgia judgment are purely issues of law. Accordingly, we review those issues de novo. Ex parte Byrom, 47 So.3d 791, 794 (Ala.2010). We emphasize, however, that our review of those issues does not extend to a review of the legal merits of the Georgia judgment, because we are prohibited from making any inquiry into the merits of the Georgia judgment by Art. IV, § 1, of the United States Constitution (“the full faith and credit clause”).[3] Pirbek USA, LLC v. Whitehead, 51 So.3d 291, 296 (Ala.2010). We further “note that ‘[t]he validity and effect of a foreign judgment, of course, are to be determined by the law of the state in which it was rendered.’ ” Orix Fin. Servs., Inc. v. Murphy, 9 So.3d 1241, 1244 (Ala.2008) (quoting Morse v. Morse, 394 So.2d 950, 951 (Ala.1981)).
*1106 III.
The gravamen of E.L.’s appeal is that the Jefferson Family Court erred by recognizing and enforcing the Georgia judgment. When considering such a claim — whether a foreign judgment should be enforced in this State — we are guided by the principle that we generally accord the judgment of another state the same respect and credit it would receive in the rendering state. This principle stems from the full faith and credit clause and was explained as follows by Chief Justice John Marshall in Hampton v. McConnel, 16 U.S. (3 Wheat.) 234, 235, 4 L.Ed. 378 (1818):
“[T]he judgment of a state court should have the same credit, validity and effect, in every other court of the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.”
The courts of this State have consistently applied the full faith and credit clause in this manner. See, e.g., Ohio Bureau of Credits, Inc. v. Steinberg, 29 Ala.App. 515, 519, 199 So. 246, 249 (1940) (stating that “the duly attested record of the judgment of a State court is entitled to such faith and credit in every court within the United States as by law or usage it had in the State from which it is taken”), and Pirtek, 51 So.3d at 295 (stating that “ ‘Alabama courts are generally required to give a judgment entitled to full faith and credit at least the res judicata effect accorded in the rendering court’s jurisdiction’” (quoting Menendez v. COLSA, Inc., 852 So.2d 768, 771 (Ala.Civ.App.2002))).
Traditionally, Alabama courts generally have applied the full faith and credit clause so as to limit their review of foreign judgments to whether the rendering court had jurisdiction to enter the judgment sought to be domesticated. This is likely because the question of a court’s jurisdiction over the subject matter or parties is one of the few grounds upon which a judgment may be challenged after that judgment has become final and any available appellate remedies exhausted. See, e.g., McDonald v. Lyle, 270 Ala. 715, 718, 121 So.2d 885, 887 (1960) (“Where it appears on the face of the. record that a judgment is void, either from want of jurisdiction of the subject matter or of the defendant, it is the duty of the court, on application by a party having rights and interests immediately involved, to vacate the judgment or decree at any time subsequent to its rendition.” (citing Sweeney v. Tritsch, 151 Ala. 242, 44 So. 184 (1907), and Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116 (1943))).[4]
In this case, E.L. relies on this principle and argues that this Court should hold that the Georgia judgment is unenforceable in Alabama because, she argues, the Georgia court lacked subject-matter jurisdiction to issue the Georgia judgment based on the facts (1) that Georgia law does not provide for so-called “second parent adoptions”[5] and (2) that V.L. was not, *1107 E.L. alleges, a bona fide resident of Georgia at the time of the adoption. However, E.L. argues in the alternative that, even if we conclude that the Georgia court was not lacking subject-matter jurisdiction when it issued the Georgia judgment, we should not enforce the Georgia judgment because, E.L. argues, doing so would be contrary to Alabama’s public policy.
In response, V.L. argues (1) that the Georgia court had subject-matter jurisdiction to issue the Georgia judgment even if Georgia law does not provide for second-parent adoptions or even if V.L. was not a bona fide resident of Georgia at the time of the adoption;[6] (2) that the Georgia judgment should be enforced even if the Georgia court lacked subject-matter jurisdiction because, V.L. argues, Georgia Code Ann., § 19-8-18(e), bars any challenge to adoption decrees filed more than six months after the decree is entered; and (3) there is no public-policy exception to the full faith and credit clause.
Georgia Code Ann., § 9-11-60, sets forth the circumstances in which a Georgia court will not enforce one of its judgments, stating, in relevant part:
“(d) Motion to set aside. A motion to set aside may be brought to set aside a judgment based upon:
“(1) Lack of jurisdiction over the person or the subject matter;
“(2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or •
“(3) A nonamendable defect which appears upon the face of the record or pleadings. Under this paragraph, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no claim in fact existed.
[[Image here]]
“(f) Procedure; time of relief. Reasonable notice shall be afforded the parties on all motions. Motions to set aside judgments may be served by any means by which an original complaint may be legally served if it cannot be legally served as any other motion. A judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time. Motions for new trial must be brought within the time prescribed by law. In all other instances, all motions to set aside judgments shall be brought within three years from entry of the judgment complained of.”
Because the current legal proceedings were initiated over six years after the Georgia judgment was entered, the only ground in § 9-11-60 upon which a Georgia court might possibly decide not to enforce the Georgia judgment is that set forth in subsection (d)(1) — lack of jurisdiction over the person or the subject matter.[7] It is *1108 undisputed in this case that E.L. and V.L, willingly appeared with the children before the Georgia court, so personal jurisdiction is not disputed; thus, lack of subject-matter jurisdiction is the only possible ground a Georgia court could have for not enforcing the Georgia judgment.
However, V.L. argues that a Georgia court would enforce the Georgia judgment even if there is a lack of subject-matter jurisdiction because of the nature of the judgment — an adoption decree — and the fact that it was rendered over six years ago. In support of this argument, she cites § 19-8-18(e), Georgia Code Ann., which provides that “[a] decree of adoption issued pursuant to subsection (b) of this Code section shall not be subject to any judicial challenge filed more than six months after the date of entry of such decree.” (Emphasis added.) In Williams v. Williams, 312 Ga.App. 47, 47-48, 717 S.E.2d 553, 553-54 (2011), the Georgia Court of Appeals held that § 19-8-18(e) barred even a jurisdictional challenge to an adoption decree if that challenge was filed outside that six-month period, notwithstanding the general rule in § 9-11-60, Georgia Code Ann., that a judgment may be challenged on jurisdictional grounds at any time:
“Notwithstanding OCGA [Official Code of Georgia Annotated] § 19-8-18(e)’s plain language, the trial court held that the Code section did not bar [the appellee’s] challenge to the adoption decree, on the ground that the challenge was brought under OCGA § 9-11-60, which allows for a judgment void for lack of jurisdiction to be attacked ‘at any time’ through a motion to set aside. OCGA § 9-ll-60(f). See generally Burch v. Dines, 267 Ga.App. 459, 461(2), 600 S.E.2d 374 (2004) (invalidity of service can give rise to lack of personal jurisdiction). But for purposes of statutory interpretation, ‘a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them.’ (Citation and punctuation omitted.) Marshall v. Speedee Cash of Ga., 292 Ga.App. 790, 791, 665 S.E.2d 888 (2008). In this case, OCGA § 19-8-18(e) is the more specific statute because it addresses when a particular type of judgment — an adoption decree— may be attacked, while OCGA § 9 — 11— 60(f) addresses when judgments in general may be attacked. Neither statute contains language indicating a legislative intent that a motion to set aside under OCGA § 9-11-60 for lack of jurisdiction is an exception to the specific prohibition in OCGA § 19-8-18(e) against ‘any judicial challenge’ to an adoption decree.”
The Georgia Court of Appeals subsequently explained the rationale underpinning § 19-8-18(e) in Bates v. Bates, 317 Ga.App. 339, 339-40, 730 S.E.2d 482, 483 (2012), stating:
“Under Georgia law, a judgment entered by a court without jurisdiction is void, Carpenter v. Carpenter, 276 Ga. 746, 747(1), 583 S.E.2d 852 (2003), and generally speaking, such a judgment ‘may be attacked in any court, by any person, at any time.’ James v. Intown Ventures, 290 Ga. 813, 816(2) n. 5, 725 S.E.2d 213 (2012). See also Cabrel v. Lum, 289 Ga. 233, 235(1), 710 S.E.2d 810 (2011) (‘[A] judgment void for lack of personal or subject-matter jurisdiction may be attacked at any time.’). But in some circumstances, these principles must yield to competing principles that derive from the compelling public interest in the finality and certainty of judgments, see Abushmais v. Erby, 282 Ga. 619, 622(3), 652 S.E.2d 549 (2007), an interest that is especially compelling with respect to judgments affecting familial relations. See Amerson v. Vandi *1109 ver, 285 Ga. 49, 50, 673 S.E.2d 850 (2009).”
See also Abushmais v. Erby, 282 Ga. 619, 622, 652 S.E.2d 549, 552 (2007) (explaining that parties may not “confer subject-matter jurisdiction on a court by agreement or waive the defense [of a lack of subject-matter jurisdiction] by failing to raise it in the trial court” but that, “[u]nder limited circumstances, the equitable defenses of laches and estoppel may prevent a party from complaining of a court’s lack of subject-matter jurisdiction”). It is evident from these decisions of the Supreme Court of Georgia and the Georgia Court of Appeals that a Georgia court will generally not entertain a challenge to a Georgia adoption decree based even on an alleged lack of subject-matter jurisdiction if that challenge is made more than six months after the challenged decree is entered.
E.L. nevertheless argues that § 19-8-18(e) does not apply in this case because, she argues, the statute by its terms applies only to adoption decrees issued pursuant to § 19-8-18(b), which provides:
“If the court is satisfied that each living parent or guardian of the child has surrendered or had terminated all his rights to the child in the manner provided by law prior to the filing of the petition for adoption or that each petitioner has satisfied his burden of proof under Code Section 19-8-10, that such petitioner is capable of assuming responsibility for the care, supervision, training, and education of the child, that the child is suitable for adoption in a private family home, and that the adoption requested is for the best interest of the child, it shall enter a decree of adoption, terminating all the rights of each parent and guardian to the child, granting the permanent custody of the child to each petitioner, naming the child as prayed for in the petition, and declaring the child to be the adopted child of each petitioner. In all cases wherein Code Section 19-8-10 is relied upon by any petitioner as a basis for the termination of parental rights, the court shall include in the decree of adoption appropriate findings of fact and conclusions of law relating to the applicability of Code Section 19-8-10.”
E.L. argues that the Georgia court failed to comply strictly with all the requirements, of § 19-8-18(b) in this ease inasmuch as the Georgia judgment failed to “terminat[e] all the rights of each parent and guardian to the child[ren].” In other words, E.L. argues that the Georgia judgment was not issued pursuant to § 19-8-18(b) — and thus is not subject to the bar of § 19-8-18(e) — because it did not terminate her own parental rights. Both the guardian ad litem and the amici curiae argue in their briefs that, regardless of the failure of the Georgia court to terminate E.L.’s parental rights in the Georgia judgment, the Georgia judgment was nonetheless issued pursuant to § 19-8-18(b) because all decrees of adoption in Georgia are issued pursuant to § 19-8-18(b) — there is, they argue, no other statute under which a Georgia adoption decree can issue.
The Supreme Court of Georgia as a whole has not specifically addressed this issue; however, in Wheeler v. Wheeler, 281 Ga. 838, 642 S.E.2d 103 (2007), a similar case involving a biological mother’s attempt to void a second-parent adoption granted her same-sex ex-partner, that court, without issuing an opinion, denied a petition for the writ of certiorari filed by the biological mother challenging the Georgia Court of Appeals’ decision not to consider her discretionary appeal of the trial court’s order denying her petition to void the adoption. However, in a dissenting opinion Justice Carley addressed the argument E.L. now makes:
*1110 “[The adoptive mother] argues that the motion to set aside is time-barred by OCGA [Official Code of Georgia Annotated] § 19-8-18(e), although the trial court did not rely on that statute. It reads as follows: ‘A decree of adoption issued pursuant to subsection (b) of this Code section shall not be subject to any judicial challenge filed more than six months after the date of entry of such decree.’ OCGA § 19-8-18(e). Subsection (b) provides for the entry of a decree terminating all parental rights in those cases where the rights of each living parent or guardian have been surrendered or terminated, or where termination of parental rights is appropriate pursuant to OCGA § 19-8-10. As previously noted, however, subsection (b) obviously does not apply here, because neither surrender nor termination of [the biological mother’s] rights was ever sought or accomplished, and the trial court entered a decree specifically preserving her rights. Because subsection (b) is inapplicable, the six-month limitation in subsection (e) clearly does not bar the motion to set aside.”
281 Ga. at 841, 642 S.E.2d at 105 (Carley, J., dissenting). We agree with the analysis of Justice Carley and his conclusion that the six-month bar in § 19-8-18(e) should not apply in the current situation. Having concluded that his is the proper analysis of § 19 — 8—18(b) and § 19-8-18(e), we can only assume that a Georgia court would make the same conclusion and, by extension, would permit a challenge on jurisdictional grounds to an adoption decree that did not fully comply with § 19 — 8— 18(b).[8]
We must therefore consider whether, in fact, E.L. has asserted an argument that actually puts the subject-matter jurisdiction of the Georgia court into question. She asserts that the Georgia court lacked subject-matter jurisdiction to issue the Georgia judgment for two reasons — because it purported to effect a second-parent adoption in which a living parent’s parental rights were not terminated and because V.L. allegedly was not a bona fide Georgia resident at the time of the judgment; however, V.L. argues that these arguments in fact implicate only the merits of the Georgia judgment, and not the Georgia court’s subject-matter jurisdiction, and the arguments are therefore, V.L. argues, barred by the full faith and credit clause, which “precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.” Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The Supreme Court of the United States explained this distinction between a subject-matter-jurisdiction challenge and a merit-based challenge in Fauntleroy v. Lum, 210 U.S. 230, 234-35, 28 S.Ct. 641, 52 L.Ed. 1039 (1908):
“No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the *1111 other only to the duty, of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise made without consideration; but it has power to do it, and, if it does, the judgment is unimpeachable, unless reversed. Yet a statute could be framed that would make the power, that is, the jurisdiction, of the court, dependent upon whether there was a consideration or not. Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule by which the court should decide.”
In this ease, it is undisputed that Georgia superior courts like the Georgia court have subject-matter jurisdiction over, that is, the power to rule on, adoption petitions. Indeed, Georgia Code Ann., § 19-8-2, subtitled “jurisdiction and venue,” provides:
“(a) The superior courts of the several counties shall have exclusive jurisdiction in all matters of adoption, except such jurisdiction as may be granted to the juvenile courts.”
E.L., however, argues that the Georgia court could properly exercise subject-matter jurisdiction only when the requirements of the Georgia adoption statutes are met, and, in this case, they were not, she argues, because those statutes make no provision for a non-spouse to adopt a child without first terminating the parental rights of the current parents. E.L.’s argument regarding the Georgia adoption statutes appears to be correct, as illustrated by Justice Carley’s explanation of those statutes in his dissenting opinion in Wheeler:
“Under certain conditions, a child who has only one living parent ‘may be adopted by the spouse of that parent. ...’ OCGA [Official Code of Georgia Annotated] § 19 — 8—6(a)(2). See also In re C.N.W., [274 Ga. 765, 768, 560 S.E.2d 1, 1 (2002)]. However, [the same-sex ex-partner] is not the spouse of [the biological mother], as ‘[m]arriages between persons of the same sex are prohibited in this state.’ OCGA § 19—3—3.1(a). See also Ga. Const, of 1983, Art. I, § IV, Par. 1(a) (approved in 2004); In the Interest of Angel Lace M., [184 Wis.2d 492, 507, 516 N.W.2d 678, 682 (1994)]. Under OCGA §§ 19-8-5(a) and 19-8-7(a), a third party who is not a stepparent, such as [the same-sex ex-partner], may adopt the child only if the parent’s rights are surrendered, or are terminated pursuant to OCGA § 19-8-10. However, neither the surrender nor termination of [the biological mother’s] parental rights was ever sought or ordered. Instead, the adoption petition was based on [the biological mother’s] consent to the adoption, wherein she expressly refused to relinquish or surrender her parental rights, and the trial court declared that the child would have ‘two legal parents’ and awarded permanent custody to both. OCGA § 19-8-19(a)(1) specifically proscribes such an order: ‘Except with respect to a spouse of the petitioner and relatives of the spouse, a decree of adoption terminates all legal relationships between the adopted individual and his relatives, including his parent....’ ‘If the legislature had intended to sanction adoptions by nonmarital partners, it would not have mandated this “cut-off’ of [“all legal relationships”] of the birth parents *1112 in these adoptions.’ In the Interest of Angel Lace M., supra at 683.”[9]
281 Ga. at 840, 642 S.E.2d at 104. See also Bates, 317 Ga.App. at 341, 730 S.E.2d at 484 (“The idea that Georgia law permits a ‘second parent’ adoption is a doubtful one ... and the arguments that [the appellant] presses about the validity of a decree that purports to recognize such an adoption might well have some merit.”). We further note that our own Court of Civil Appeals considered this issue when this case was before it and concluded that “[its] independent review of the Georgia Adoption Code fully supports Justice Curley’s position.” E.L. v. V.L., 208 So.3d at 1100.
Having now conducted our own analysis of the Georgia adoption statutes, we echo the conclusion of Justice Carley and the Court of Civil Appeals that Georgia law makes no provision for a non-spouse to adopt a child without first terminating the parental rights of the current parents. It is undisputed that a termination of E.L.’s parental rights did not occur in this case; thus, it would appear to be undisputed that the Georgia court erred by entering the Georgia judgment by which V.L. became an adoptive parent of the children. Our inquiry does not end here, however, as that error is ultimately of no effect unless it implicates the subject-matter jurisdiction of the Georgia court. While not conceding that the Georgia court erred, V.L. argues that any such error has no bearing on whether the Georgia court had subject-matter jurisdiction to issue the Georgia judgment, stating:
“The question of whether the Georgia court properly interpreted and applied Georgia’s adoption statutes to grant an adoption to V.L. without terminating E.L.’s rights as a parent is not a question of subject-matter jurisdiction, but rather of whether the adoption as pled was a cognizable action under Georgia law. ‘The legal question of the cogniza-bility of an alleged cause of action under state law goes to the merits of a lawsuit asserting that cause of action rather than the subject-matter jurisdiction of the court to decide the legal question.’ South Alabama Gas District v. Knight, 138 So.3d 971, 979 (Ala.2013) (Murdock, J., concurring in the rationale in part and concurring in the result); see also Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 46 (Ala.2013) (‘ “Lack of statutory authorization best supports analysis as the lack of a claim upon which relief can be granted ... not a claim over which the forum court lacks subject-matter jurisdiction....”’) (quoting Jerome A. Hoffman, The Malignant Mystique of ‘Standing’, 73 Ala. Law. 360, 362 (2012)). Therefore, if the Georgia court had subject-matter jurisdiction over the adoption, which it did, E.L. is prohibited from challenging the judgment on any grounds, including arguing that Georgia does not allow anyone other than a spouse to adopt without terminating the rights of the existing parent.”
V.L.’s brief, at pp. 24-25. The Court of Civil Appeals in fact agreed with this argument, stating in its opinion:
“Although it may be that the Georgia court erroneously construed Georgia law so as to permit V.L, to adopt the chil *1113 dren as a ‘second parent/ that error goes to the merits of the case and not to the subject-matter jurisdiction of the Georgia court. See Pirtek [USA, LLC v. Whitehead], 51 So.3d [291,] 296 [(Ala. 2010)] (holding that court in making inquiry into jurisdiction of foreign court to enter judgment cannot consider merits or correctness of foreign judgment).”
E.L. v. V.L., 208 So.3d at 1100.
However, we disagree. “The requirements of Georgia’s adoptions statutes are mandatory and must be strictly construed in favor of the natural parents.... ” In re Marks, 300 Ga.App. 239, 243, 684 S.E.2d 364, 367 (2009). See also Doby v. Carroll, 274 Ala. 273, 274, 147 So.2d 803, 804 (1962) (“In Alabama, the right of adoption is purely statutory and in derogation of the common law, ... and unless the statute by express provision or necessary implication confers the right to adoption, such right does not exist.”). Although § 19-8-2(a) of the Georgia Code gives superior courts such as the Georgia court exclusive jurisdiction to enter adoption decrees, Georgia Code Aim., § 19-8-5(a), further defines the condition that must exist before such superior courts can grant adoptions to third parties such as V.L. — “each such living parent ... has voluntarily and in writing surrendered all of his rights to the child to that third person for the purpose of enabling that third person to adopt the child.” As explained supra, it is undisputed that E.L. did not surrender her parental rights in this case; accordingly, the Georgia court was not empowered to enter the Georgia judgment declaring V.L. to be an adoptive parent of the children. That is to say, the Georgia court lacked subject-matter jurisdiction to enter the Georgia judgment. The Georgia judgment is accordingly void, and the full faith and credit clause does not require the courts of Alabama to recognize that judgment. Indeed, it would be error for the courts of this State to do so, and, to the extent the judgments of the Jefferson Family Court and Court of Civil Appeals did give effect to the Georgia judgment, they did so in error.[10]
IV.
We granted the petition for a writ of certiorari filed by E.L. to review the judgment entered by the Court of Civil Appeals insofar as that judgment affirmed the Jefferson Family Court’s judgment recognizing as valid the Georgia judgment approving the adoption by V.L. of the children of her former same-sex partner E.L. After reviewing the record and analyzing the relevant law of both this State and Georgia, we now conclude that the Court of Civil Appeals and the Jefferson Family Court erred in giving full faith and credit to the Georgia judgment because the Georgia court was without subject-matter jurisdiction to issue the Georgia judgment. Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, BOLIN, MAIN, and WISE, JJ., concur.
PARKER, J., concurs specially.
*1114 MURDOCK, J., concurs in the result.
SHAW, J., dissents.

. Rule 1(B), Ala. R. Juv. P., provides that a postjudgment motion in a juvenile case is denied by operation of law if not ruled upon within 14 days of its filing unless specific steps outlined in the rule are taken to extend *1105 that period. No attempt was made to extend the 14-day period in this case.

. V.L. and E.L. subsequently filed briefs in support of their positions, as did the guardian ad litem appointed to represent the children, who filed a brief urging this Court to affirm the judgment of the Court of Civil Appeals, We also granted the subsequent motion filed by the American Academy of Adoption Attorneys, Inc., and the Georgia Council of Adoption Lawyers, Inc., requesting permission to file an amicus brief based on their interest in the subject matter of this appeal, and we have received their joint brief in support of V.L. urging us to affirm the judgment of the Court of Civil Appeals.

. Article IV, § 1, of the United States Constitution provides, in pertinent part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.”

. Of course, in certain circumstances the lack of personal jurisdiction may be waived; however subject-matter jurisdiction may never be waived. Campbell v. Taylor, 159 So.3d 4, 11 (Ala.2014).

. "A 'second parent’ adoption apparently is an adoption of a child having only one living parent, in which that parent retains all of her parental rights and consents to some other person — often her spouse, partner, or friend— adopting the child as a ‘second parent.’ See Butler v. Adoption Media, LLC, 486 F.Supp.2d 1022, 1044 (N.D.Cal.2007) (describing ‘second parent’ adoption under California law).” Bates v. Bates, 317 Ga.App. 339, 340 n. 1, 730 S.E.2d 482, 483 n. 1 (2012). The Bates court further noted that "[t]he idea that Georgia *1107 law permits a 'second parent’ adoption is a doubtful one.” 317 Ga.App. at 341, 730 S.E.2d at 484.

. V.L. does not concede that Georgia law does not allow second-parent adoptions or that she failed to comply with the residence requirements of the Georgia adoption statutes.

. Although E.L. suggests that V.L. committed a fraud upon the court by claiming to be a Georgia resident when she was not, such a claim would entitle her to relief from the Georgia judgment only to the extent that it implicates the subject-matter jurisdiction of the Georgia court. Section 9 — 11—60(d)(2) provides that a judgment may be set aside for fraud only if the party seeking to set aside the judgment is free from fault, and subsection (f) provides that a judgment may be challenged on the basis of fraud only within three years of its entry. E.L. was a willing participant in any fraud, and it is undisputed that no challenge was made to the Georgia judgment for more than six years after it was entered.

. Although Justice Carley's analysis of § 19-8 — 18(b) and § 19 — 8—18(e) was offered in a special writing dissenting from the majority’s decision not to grant certiorari review in Wheeler, the majority did not issue an opinion explaining its rationale for denying the petition for the writ of certiorari, and, accordingly, it cannot be presumed that the majority’s decision was premised on a contrary analysis of § 19-8-18(b) and § 19-8-18(e). See Wheeler, 281 Ga. at 838-39, 642 S.E.2d at 103 (Carley, J., dissenting) (" 'With no explanation accompanying the majority’s denial of the motion to dismiss, I am left to conjecture.’ ” (quoting Perdue v. Baker, 276 Ga. 822, 823-24, 586 S.E.2d 303, 304 (2003) (Benham, J., dissenting))).

. We note that V.L. has not argued in this case that she was the spouse of E.L, and thus entitled to adopt the children on that basis. To the contrary, she asserts in her brief to this Court that
"this case has nothing to do with marriage. V.L. is not a stepparent and was permitted to adopt as an unmarried person. Recognizing V.L.'s adoption and treating her like any other adoptive parent does not involve or require recognizing the parties’ marriage in any way; as a legal matter, tire two are completely unrelated.”
V.L.'s brief, at p. 7.

. Because we have held that the Georgia judgment is void for lack of subject-matter jurisdiction based on the fact that the Georgia adoption statutes malee no provision for a non-spouse to adopt a child without first terminating the parental rights of the current parents, we need not consider E.L.’s other arguments that the Georgia judgment is also void because V.L, was not a bona fide resident of Georgia or that the courts of this State need not recognize that judgment because, E.L. alleges, it is contrary to the public policy of Alabama.